**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

KEITH SHWAYDER,

Applicant,

v.

BLAKE DAVIS, WARDEN,
FCI ENGLEWOOD

Respondent.

---

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241**

---

COMES NOW Keith Shwayder, Applicant in the above-styled action and hereinafter referred to as "Applicant," by and through undersigned counsel, and files his Memorandum of Law in Support of his Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. The Applicant contends that the Bureau of Prisons (hereinafter referred to as "BOP"), through its agent, Dr. Card, has violated the Applicant's Fifth and Fourteenth Amendments rights.

## I. ISSUE

Applicant's Equal Protection Rights have been violated as a result of the conduct of Dr. Card, an agent of the BOP, in that the Applicant has been treated differently from other similarly situated inmates and that such treatment was the result of intentional or purposeful discrimination.

## II. LEGAL BASIS FOR RELIEF

**A.  Requirements for Entry into the Residential Drug Abuse Treatment Program (hereinafter referred to as "RDAP").**

In order to be considered eligible into the RDAP program, the BOP generally follows the controlling regulations of 28 C.F.R. § 550.56 and its program statement of 5330.10. BOP program statement 5331.10 contains certain eligibility criteria that an inmate must fulfill to enter the drug treatment program, including the prerequisite that the inmate suffer from a "verifiable documented drug abuse problem."  As verification, the program statement requires:  (1) a determination by drug abuse program staff that the inmate has a substance abuse disorder; and (2) substantiation in the PSI or other similar documents in the inmate's central file of the diagnosis.  "[A]ny written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem."  P.S. 52210.10 at 4 (emphasis in the original).

The BOP uses the following criteria to determine an inmate's eligibility for entry into the RDAP program:  First, the BOP verifies the inmate's drug or alcohol problems based on the Presentence Investigative Report (hereinafter referred to as "PSI") or other similar documents in the central file which supports the diagnosis;  Second, the BOP reviews all of the pertinent documents in the inmate's central file to corroborate self reported information and said information must meet the diagnostic criteria for substance dependence indicated in the DSM-IV; and, Third, the inmate receives an eligibility interview.  In this instance, the Applicant presented substantial and significant evidence of his DSM-IV diagnosis of alcohol dependence within twelve (12) months of his arrest.

Here, Dr. Card incorrectly and purposefully with prejudicial intent determined that the Applicant would be ineligible to enter into the RDAP program.  See Equal Protection Violation Argument Presented in Section B.  Dr. Card ignored Dr. Rabin's diagnostic evidence presented by the Applicant and refused to establish contact with Dr. Rabin.  Unlike Dr. Card, Dr. Rabin met with the Applicant prior to his incarceration, met with the Applicant prior to the preparation of his PSI, and Dr. Rabin based his findings on established principles of psychology, codified in DSM-IV.  But for Dr. Card's violation of Applicant's equal protection rights, Applicant would have successfully supported evidence of a DSM-IV diagnosis of alcohol dependence.

Additionally, the Applicant submitted documentation supporting a DSM-IV diagnosis of alcohol dependence.  Such verification is not limited to substantiation in the PSI.  In accordance with the program statement, this documentation of use "shall" be accepted, and no additional verification in the file is required.  Thus, the Applicant has met all of the requirements for entry in RDAP consistent with BOP policy and Dr. Card has acted arbitrarily and with prejudice intent in denying Applicant's eligibility.

**B. Equal Protection Violation.**

The Equal Protection Clause provides that 'no State shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The central mandate of this Clause "is racial neutrality in governmental decision making." Miller v. Johnson, 515 U.S. 900, 904 (1995).  First, "the Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike. . . . In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to

3

them." Campbell v. Buckley, 203 F.3d 738, 747 (10th Cir. 2000) (footnotes, quotations, and ellipses omitted), petition for cert. filed, (U.S. June 15, 2000) (No. 99-2015).

Second, "purposeful discrimination is an essential element of an equal protection violation." Lewis v. City of Fort Collins, 903 F.2d 752, 755 n.1 (10th Cir. 1990). "'Discriminatory purpose'" implies that a decision maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r v. Feeney, 442 U.S. 256, 279 (1979). Finally, "under the rational basis test, if there is a plausible reason for the state action" the court's inquiry is at an end. United States v. Castillio, 140 F.3d 874, 883 (10th Cir. 1998). The Court in Turner v. Safley, 482 U.S. 78 (1987) has defined the standard by which courts evaluate whether a legitimate penological interest exists. In order to establish a rational connection between a prison policy and a legitimate government interest, a court must determine "whether the underlying policy is (1) legitimate; (2) neutral, and (3) whether the policy is rationally related to the objective." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989).

Here, the Applicant has been denied equal protection under the law as a result of the actions of Dr. Card. Therefore, in order to establish an equal protection violation, the Applicant must (1) prove that he has been treated differently from others who are similarly situated; (2) that the unequal treatment was the result of intentional or purposeful discrimination; and (3) that in order to justify the disparity in treatment there needs to be a legitimate penological interest. See generally, Dellarciprete v. Gutierrez (2003 WL 44447 (N.D.W.Va.).

Applying the first prong of the equal protection standard, the Applicant asserts that he was treated differently from other similarly situated inmates in each of the three tests listed below that the BOP uses to admit inmates into the RDAP program.

**1. The first BOP test involves verification in the PSI or other similar documents in the central file which supports the diagnosis.** Many prisoners enter FPC Englewood already RDAP ready. Many of these inmates have satisfied this test with a health professional interview in place of mention of drug abuse in the PSI. These prisoners are routinely admitted to the RDAP program at FPC Englewood. For those that do not come into FPC Englewood RDAP ready, some are allowed to use a health professional interview as a substitute for mention of drug abuse in the PSI and some are not. For example, inmates Ed Speer and Tom Mower did not have drug abuse cited in their PSIs but they had a health professional interview. They were admitted into the RDAP program. The Applicant was not allowed to use his health professional interview as a substitute for mention in the PSI. [See Exhibits 1-3]. Hence a rejection of the Applicant for entry into the RDAP program because he had no verification in his PSI, even though he had "similar documents" including his psychiatrists' letters in his central file, is a violation of the first prong of the equal protection standard.

**2. The second BOP test involves review of all pertinent documents in the inmate's central file to corroborate self reported information. The information must meet the diagnostic criteria for substance dependence indicated in the DSM-IV.** The many letters submitted by Dr. Rabin qualify as pertinent documents in the Applicant's central file. They could hardly be more relevant for meeting the DSM-IV diagnostic criteria for substance abuse. "The BOP instituted a practice of examining the

5

twelve-month period immediately preceding the inmate's instant offense to determine if documentation exists to support a claim of drug or alcohol use." Quintas v. Baukneck (2002 WL 1174353 (N.D. Florida). The overwhelming majority of inmates admitted to the RDAP program at FPC Englewood do not have documentation in their file within one year of arrest conforming to the DSM-IV criteria. Hence, a rejection of the Applicant because "he had no supporting documentation" is a blatant violation of the first prong of the equal protection standard.

**3. The third test of the BOP involves the eligibility interview.** The BOP procedures require that the diagnosis of the eligibility interview be verified by other documents. Moreover, the diagnosis that Dr. Card made was contradicted by that made by Dr. Rabin, a practicing Denver psychiatrist. His diagnosis was made over several interviews, and within one year of the Applicant's arrest, rather than nine (9) years afterward as in the case of Dr. Card. Even if the BOP procedures had not required verification, ordinary professional standards would dictate that Dr. Card do more than ignore Dr. Rabin's findings. Despite the Applicant's many requests, Dr. Card did not contact Dr. Rabin. The rejection of the Applicant in the eligibility interview without any attempt to reconcile the differences between the two diagnoses is a violation of the first prong of the equal protection standard and is a violation of the BOP procedures.

Applying the second prong of the equal protection standard, the Applicant asserts that there was intentional or purposeful discrimination against the Applicant. Dr. Card was not going to let the Applicant into the program, no matter what documentation he presented or what happened in the eligibility interview. Had Dr. Card followed the BOP's program statement 5331.10 regarding eligibility criteria, she would have found

6

that the Applicant had a "verified documented drug problem thereby requiring treatment." See generally, Kuna v. Daniels, 234 F.Supp. 2d 1168 (D.-Or. 2002). Dr. Card's motivation in ignoring not only BOP policy, but verifiable evidence regarding the Applicant's alcohol abuse problems appears to be based on an irrational purposeful discrimination policy against the Applicant. Dr. Card's confusion of the Applicant and inmate Burstyn indicates that they both are in the same category as perceived by Dr. Card. Whatever this category is, both were singled out for special treatment and there was intentional discrimination against the Applicant.

Applying the third prong of the equal protection standard, the Applicant asserts that there is no rational penological interest in preventing the Applicant from entering the RDAP program. In fact, as Dr. Card stated to the Applicant, "anyone here could benefit from the program but that there were people here who needed it more." It should be noted, that several inmates were shipped from other prisons to FPC Englewood to fill empty slots in the RDAP program. Given the history of the Applicant's alcohol abuse and the documentation that existed, there would be no "legitimate, neutral, or rational basis" to disqualify the Applicant's entry into RDAP. See generally, Thornburgh v. Abbott, 490 U.S. 401 (1989). "The BOP must provide residential substance abuse treatment for all eligible prisoners, subject to the availability of appropriations." 18 U.S.C. § 3621(c)(1). The Applicant remains willing to participate in a residential substance abuse treatment program. See generally, 18 U.S.C. § 3621(e)(5)(B)(i) and (ii).

This Applicant has been treated differently than other inmates, has been discriminated against, and there exists no rational penological reason for such actions. See generally, Campbell v. Buckley, 203 F.3d 738 (10th Cir. 2000). Denying the Applicant entry into

7

the RDAP program is not only arbitrary but such action indicates an equal protection violation under the law.

### III.  REQUEST FOR RELIEF

This Writ of Habeas Corpus Petition should be GRANTED and the Applicant should receive immediate access into the RDAP program.  Any delay in affording the Applicant access into RDAP will deny him the full benefits consistent with 28 C.F.R § 550.58.  Therefore, it is requested that this Court expedite its review of the claims presented.

Applicant also requests the opportunity to amend his Memorandum of Law as needed.

DATED this 18th day of January, 2008.

Respectfully submitted,

s/Robert G. Levitt
Robert G. Levitt, Esq.
*Pro Bono Publico*
Counsel for Applicant
Colorado Reg. 24252
600 17th Street
Suite 2800 South
Denver, Colorado 80202
(303) 377-9000
Email address:  rglevitt@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of January, 2008, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 was deposited in the U.S. Mail, postage prepaid, and sent to the following:

Warden Blake Davis
FCI Englewood Colorado
Federal Correctional Institution
9595 West Quincy Avenue
Littleton, Colorado 80123

United States Attorney
Office of the United States Attorney
1225 17th Street, Suite 700
Denver, Colorado 80202

                                              s/Robert G. Levitt
                                              Robert G. Levitt, Esq.